IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

LUIS REYES,

                    *Petitioner*,

          v.

DONNOVAN WRIGHT, *et al*.,

                    *Respondents*.

1:26-cv-00474-MSN-WBP

ORDER

Luis Reyes ("Petitioner") has filed a two-count Amended Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in which he asserts that he has been illegally detained by the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE"). ECF 4. Specifically, Petitioner alleges that his characterization by DHS as an "applicant for admission" pursuant to 8 U.S.C. § 1225(a), thus subjecting him to mandatory detention under 8 U.S.C. § 1225(b)(2), violates the Immigration and Nationality Act ("INA") (Count I), and his right to due process (Count II).

Petitioner is currently detained at the Farmville Detention Center in Farmville, Virginia. ECF 1 ¶ 1. He has sued Donnovan Wright, the Field Office Director of ICE Enforcement and Removal Operations' Washington Field Office; the DHS Secretary[1]; DHS itself; Pamela Bondi, the Attorney General; and the Executive Office for Immigration Review (collectively "Federal Respondents"). *Id*. at 1. He has also sued Jeffrey Crawford, the warden of the Farmville Detention Center. *Id*.

In response to the Court's Order of February 18, 2026 (ECF 2), Federal Respondents confirmed that the factual and legal issues presented in the Petition do not differ in any material

---

[1] The Petition names Kristi Noem who was the DHS Secretary at the time the Petition was filed.

fashion from those presented in *Servellon Martinez*, 1:25-cv-1792 (E.D. Va.). ECF 5. After receiving the Federal Respondents' Notice, the Court required the Federal Respondents to submit an updated response explaining why Petitioner's earlier bond order was revoked. ECF 6. Federal Respondents thus submitted an updated Notice with additional details about Petitioner's immigration history, ECF 7, to which Petitioner responded, ECF 8.

For the reasons that follow, the Court concludes 8 U.S.C. § 1226(a) governs Petitioner's detention. However, because Petitioner has been re-detained on an earlier bond order because of a change in circumstances, the Court concludes that it must deny Petitioner's request for immediate release.

## I.    BACKGROUND

Petitioner is a citizen of El Salvador who entered the United States in 2006. ECF 4 ¶¶ 19, 46. He now lives in Sterling, Virginia with his partner and four-year-old U.S. citizen child. *Id.* at ¶ 46. Since 2022, Petitioner has worked for a construction company, a job which requires frequent out-of-state travel. ECF 8 ¶ 1.

In March 2025, Petitioner was arrested and charged with Reckless Driving. ECF 4 ¶ 46. Upon the conclusion of his criminal proceedings, he was transferred to ICE custody. *Id.* On March 4, 2025, an Immigration Judge ("IJ") ordered Petitioner's release on a $7,500 bond, and Petitioner was subsequently released and enrolled in an Alternative to Detention ("ATD") program. ECF 7-1 ¶¶ 7-8.

In November 2025, Petitioner traveled to the state of Delaware for work. ECF 8 ¶ 2. Petitioner claims that, prior to his travel, he notified the ICE officer responsible for overseeing his release that he needed to travel for work and, as was customary, did not receive any response. *Id.* ¶ 3. On December 1, 2025, Petitioner appeared for an ICE check-in and requested permission to

travel to Delaware again for work the following day. *Id.* ¶ 5. Petitioner claims that he was told he would receive permission, but never received any written confirmation. *Id.*

Petitioner traveled to Delaware from December 2, 2025, to December 4, 2025. *Id.* ¶¶ 6-7. Upon his return, ICE notified him that he needed to report for a check-in on December 10, 2025. *Id.* ¶ 8. At his check-in, ICE informed him that he had violated his ATD travel restrictions by failing to appropriately notify ICE of his travel. *Id.* ICE detained him, terminated his ATD, and transferred him to the Farmville Detention Center where he has remained since. *Id.*; ECF 4 ¶ 12.

## II.    ANALYSIS

The Court first concludes that Petitioner's detention is governed by 8 U.S.C. § 1226(a) and not, as Federal Respondents claim, by 8 U.S.C. § 1225(b)(2). Petitioner contends that his detention should be governed by § 1226(a) and that his current detention without bond pursuant to § 1225(b)(2) violates his right to due process. In *Servellon Martinez*, Federal Respondents "recognize[d] that this Court and other jurists of this Court recently rejected Federal Respondents' arguments" as to why § 1225(b)(2) applies to petitioners in analogous circumstances. ECF 5 at 1, No. 1:25-cv-1792 (E.D. Va. Oct. 23, 2025); *see also, e.g.*, *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382-MSN-WEF, 2025 WL 2783800 (E.D. Va. Sept. 30, 2025); *Luna Quispe v. Crawford*, No. 1:25-cv-1471-AJT-LRV, 2025 WL 2783799 (E.D. Va. Sept. 29, 2025). Nevertheless, they raised these same arguments "to preserve them for appeal." ECF 5 at 1, No. 1:25-cv-1792 (E.D. Va. Oct. 23, 2025).

At bottom, Federal Respondents' argument is that anyone in the United States who has not been admitted is subject to mandatory detention under § 1225(b), and § 1226(a)'s discretionary detention provisions apply only to those who have been given legal status and subsequently placed into removal proceedings. *Id.* at 5–14. They therefore argue that because Petitioner is present in

3

the United States but has not been legally "admitted," he should be considered an applicant for admission under § 1225(a), and subject to mandatory detention under § 1225(b)(2). *Id.*

Federal Respondents' argument reflects DHS's novel interpretation of decades-old immigration detention statutes which, as several district courts throughout the country have found,[2] is contrary to DHS's implementing regulations and published guidance, the decisions of its immigration judges (until very recently), longstanding practice in U.S. immigration law, the Supreme Court's interpretation of the statutory scheme, and traditional tools of statutory construction. *See, e.g.*, *Hasan v. Crawford*, No. 1:25-cv-1408, 2025 WL 2682255, at *8–9 (E.D. VA. Sept. 19, 2025); *Romero v. Hyde*, No. 25-cv-11631, 2025 WL 2403827, at *9 (D. Mass. Aug. 19, 2025). This new approach will also subject "millions more undocumented immigrants to mandatory detention, while simultaneously narrowing § 1226(a) such that it would have [an] extremely limited (if any) application." *Lopez Benitez v. Francis*, No. 25-cv-5937, 2025 WL 2371588, at *8 (S.D.N.Y. Aug. 13, 2025) (footnote omitted). This Court has previously addressed several of these points in *Quispe-Ardiles*, 2025 WL 2783800, and adopts and incorporates that reasoning into this Order.[3] *See also, e.g.*, *Flores Pineda v. Simon*, No. 1:25-cv-01616-AJT-WEF, 2025 WL 2980729, at *2 nn.2 & 3 (E.D. Va. Oct. 21, 2025) (providing additional explanation for why § 1225(b)(2) does not apply).

---

[2]   *See Luna Quispe v. Crawford*, No. 1:25-cv-1471-AJT-LRV, 2025 WL 2783799, at *6 & n.9 (E.D. Va. Sept. 29, 2025) (collecting cases).

[3]   The Court further notes that, "of the 288 district court decisions to address the issue, 282 have determined that § 1226(a) applies or likely applies in situations similar to those presented here." *Demirel v. Fed. Det. Ctr. Phila.*, 2025 WL 3218243, at *4–5 (E.D. Pa. Nov. 18, 2025). Although the Court is aware of the Fifth Circuit's decision reaching a contrary conclusion in *Buenrostro-Mendez v. Bondi*, Nos. 25-20496 & 25-40701, 2026 WL 323330 (5th Cir. Feb. 6, 2026), that decision is not binding here, *CASA de Maryland, Inc. v. Trump*, 971 F.3d 220, 260 (4th Cir. 2020). Moreover, the Court is unpersuaded by the Fifth Circuit majority's reasoning for many of the reasons cogently set forth in Judge Douglas's dissent, which explains that the majority's interpretation risks rendering substantial portions of the statutory scheme superfluous and internally inconsistent. *See Buenrostro-Mendez*, 2026 WL 323330, at *10–18.

Because Petitioner has been present in the United States for roughly twenty years, and because § 1226(a) sets forth "the default rule" for detaining and removing noncitizens "already present in the United States," *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018), his detention is governed by § 1226(a).

Having concluded that Petitioner is detained pursuant to § 1226(a), the Court must next consider whether his continued detention is lawful. Under § 1226(b), DHS "may revoke a bond or parole authorized under [§ 1226(a)], rearrest the [noncitizen] under the original warrant, and detain the [noncitizen]" upon a showing of a change of circumstances. *Luna Sanchez v. Bondi*, 1:25-cv-01888, 2025 WL 3191922, at *4 (E.D. Va. Nov. 14, 2025). Here, Federal Respondents have shown a change in circumstances—Petitioner's alleged violation of his release order. While Petitioner disputes the contours of his prior release order and the notice he was required to give ICE prior to traveling, the Court concludes that DHS was within its authority under § 1226(b) to revoke Petitioner's bond and release.

### III.   CONCLUSION

For all the reasons stated above, the Petition (ECF 1) is DENIED.

The Clerk is directed to enter judgment in Respondents' favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

                                                          /s/
                                              Michael S. Nachmanoff
                                              United States District Judge

March 13, 2026
Alexandria, Virginia

5